**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Dennis M. Mounce</u>

    **v.**

<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>U.S. Social Security</u>
<u>Administration</u>

Case No. 10-cv-560-PB
Opinion No. 2016 DNH 106

<u>**MEMORANDUM AND ORDER**</u>

Attorney Elizabeth R. Jones seeks $37,953.63 in attorney's fees for helping Social Security claimant Dennis Mounce win past-due disability benefits.  She has filed a motion to award fees under 42 U.S.C. § 406(b), arguing that either of two fee agreements she entered into with Mounce entitle her to 25% of his past-due benefits.  Both Mounce and the Social Security Commissioner oppose her request, arguing that the proposed fee is unreasonably high.  Because I conclude that the parties have not adequately addressed whether Jones's fee agreements entitle her to the relief she seeks, I reserve judgment on the merits and ask for further briefing as explained below.

## I.   BACKGROUND

### A.   Procedural History

Dennis Mounce first applied for disability benefits in 2007.  Doc. No. 14-1 at 1.  His application was denied.  Id. The next year, in June 2008, Mounce applied again for disability benefits, and in October 2008 he hired Attorney Jones to represent him with his claim.  Id. at 1-2.  At the beginning of the representation, Jones and Mounce signed a contingency fee agreement.  That agreement applied only to Jones's "representation through a hearing before the Administrative Law Judge."  Doc. No. 17-1 at 6.  It provided that Jones's attorney fee "shall be equal to 25%" of Mounce's past-due benefits "or the maximum fee specified by 42 U.S.C. 406(a)(2)(A)"[1] or $5,300, "whichever is the least at the time of the ALJ decision."  Id. If Mounce lost his claim, Jones would be paid nothing.  Id.

After a June 2010 hearing, the ALJ denied Mounce's application.  Doc. No. 17 at 1.  Without signing a new fee agreement, but with Jones's ongoing assistance, Mounce appealed to the Decision Review Board.  In October 2010, the Board

---

[1] The agreement states the "maximum fee specified by 42 U.S.C. § 406(a)(20)(A)," doc. no. 17-1 at 6, but this is likely a typo, since there is no Section 406(a)(20)(A).  See 42 U.S.C. § 406(a).

affirmed the ALJ's denial.  Doc. No. 1 at 2.  Two months later,
in December 2010, Jones continued to represent Mounce by filing
an appeal in this court.  Doc. No. 1.  Jones and the
Commissioner completed briefing in the case by May 2011.  See
Doc. Nos. 7, 9.  Then, in October 2011, after the parties had
filed their briefs but before I ruled on the case, Jones had
Mounce sign a second fee agreement.  See Doc. No. 14-2 at 12.

That second agreement had two "tiers."  The first tier
stated that if Mounce won "at any administrative level" through
the first ALJ decision after the date of the agreement, Jones
would receive either 25% of Mounce's past-due benefits or
$6,000, whichever was smaller.  Doc. No. 17-1 at 7.  In other
words, if the court remanded the case and the ALJ subsequently
awarded benefits, Jones would receive either 25% of those
benefits or $6,000.  The second tier, however, provided a
different fee structure: if Mounce lost at the first ALJ
decision after the date of the agreement, and then wished to
appeal, the agreement stated that Jones "will ask SSA to approve
a fee no greater than 25% of all back benefits awarded in
[Mounce's] case."  Id.  In other words, if the next ALJ decision
was a denial, and Mounce wished to appeal again to the Appeals
Council or another entity, Jones would not be subject to a

3

$6,000 cap, and would instead "ask SSA to approve" up to 25% of any back benefits.  Id.

The second agreement, unlike the first, also contained a provision addressing attorney fees under the Equal Access to Justice Act (EAJA).  Id.  It provided that "if a court awards [Mounce] a fee under the Equal Access to Justice Act, [Mounce] assign[s] them to [Jones]."  Id.  The provision also noted that if Jones received both an EAJA fee and a fee from Mounce's back benefits, Jones would refund to Mounce the lesser of the two sums.  Id.  The agreement contained no other reference to Jones's work before the court.  See id.

In November 2011, less than a month after Mounce signed the second fee agreement, I granted Mounce's appeal and ordered a remand.  See Doc. No. 12.  Jones then represented Mounce at two more hearings before an ALJ.  In September 2013, the ALJ denied, yet again, Mounce's application.  Doc. No. 14-1 at 2.  Mounce chose to appeal that ruling to the Appeals Council.  Id.  In August 2014, the Appeals Council remanded the case to a new ALJ for yet another hearing.  Id.

While preparing for that hearing in June 2015, Jones had Mounce sign a third fee agreement.  Doc. No. 17-1 at 8.  That agreement provided that if Mounce "won at any administrative level through the first Appeals Council decision after the date

4

of this agreement, [Mounce] agree[s] that the attorney fee will be 25% of all past-due benefits." Id. (emphasis omitted). Other than an EAJA provision identical to that of the second agreement, the third agreement did not mention compensation for Jones's work before the court. See id.

Two months after the third agreement was signed, in August 2015, the ALJ approved Mounce's claim and awarded him $151,814.50 in past-due disability benefits. Doc. No. 14 at 2. In the decision, the ALJ attached a notice to Mounce stating: "I do not approve the fee agreement between you and your representative because [t]he fee agreement sets a fee that is more than the lesser of 25 percent of the past-due benefits or $6,000." Doc. No. 16-2 at 4. The notice provided instructions for reviewing this determination. Id. Jones, however, did not request review from the SSA. See Doc. Nos. 17; 16-1 at 1-2.

Instead, on March 10, 2016, Jones filed a motion for attorney fees with this court seeking 25% of Mounce's past-due benefits, or $37,953.63, as compensation for work done before the court. Doc. No. 14. A month later, on April 13, 2016, the Commissioner filed a response opposing Jones's fee request. Doc. No. 16. As part of her response, the Commissioner appended a letter that Mounce had written in January 2016 to ALJ James D'Alessandro asking D'Alessandro to deny Jones's 25% fee

5

petition.[2]  <u>See</u> Doc. No. 16-3.  The Commissioner cited Mounce's
letter as one reason, among others, why I should reduce Jones's
requested fee.

Mounce's letter made a number of accusations against Jones.
Mounce claimed that he "always signed and resigned the same
basic fee agreement" with Jones and made no mention of the three
different agreements.  <u>Id.</u> at 1.  This "basic" agreement, Mounce
argued, provided that Jones would receive "$5,500-$6,000," but
only if Mounce won his claim.  <u>Id.</u>  Sometime before he won back
benefits, however, Mounce was called into Jones's office to sign
over a "$5,000" check in Mounce's name from the SSA.  <u>Id.</u>
Mounce signed over the check, but stated that he "did not
understand" why Jones was entitled to the money, since he had
not yet won his case.  <u>Id.</u>

Mounce's letter also described the events leading to the
signing of the third and final fee agreement.  A week before his
June 2015 hearing, Mounce explained, he and his wife met with
Jones at her office.  <u>Id.</u>  During that meeting, Mounce claims
that Jones said "we needed to sign another fee agreement . . .
stating she would receive 25% of the claim . . . ."  <u>Id.</u>
According to Mounce, "this did not go over well," and "my wife

---

[2] It appears that ALJ D'Alessandro had already denied Jones's fee
request several months earlier, but Mounce nonetheless addressed
the letter to him.  <u>See</u> Doc. No. 16-2 at 4-5.

and I started to get very upset." Id.  "My wife started crying
and we did not want to sign the paper we wanted to get up and
leave." Id.  Mounce alleges that Jones told them "this is
business" and declined to modify the agreement.  Id.

Eventually Terry Daley, a partner in Jones's law firm, was
called into the office.  Id. at 2.  Mounce allegedly told Daley
that the fee agreement was "grossly excessive" and that he "knew
the law stated around $6,000," not more.  Id.  Mounce also
complained that Jones was "putting me and my family under duress
at this time," and "we couldn't believe it." Id.  Daley
allegedly asked Jones to "just accept the normal fee agreement,"
but Jones declined, explaining that she had already taken the
case to federal court and was entitled to 25% of Mounce's back
benefits, per the agreement.  Id. at 1.  Mounce then asked Jones
why she had received a $5,000 fee from the Social Security
Administration when Mounce had not yet received anything.  Id.
at 2.  In response, according to Mounce, Jones stated that
Mounce had to sign her fee petition or "we would have to go to
the hearing without her period." Id.  The conversation finished
with Jones saying "she would be happy with $18,000.00 which,"
according to Mounce, "would be really $23,000.00 including the
$5,000.00 she was already paid way long before [m]y wife and I

7

received anything."  Id.  Mounce noted that he felt "we have been coerced into signing this fee Petition."  Id.

Jones refutes much of this account.  On May 5, 2016, she filed a reply memorandum which addressed, among other things, Mounce's letter.  Doc. No. 17.  She stated that she was unaware that Mounce had contacted the ALJ until the Commissioner mentioned it in her brief opposing the fee request.  Id. at 1. Jones then explained that the "$5,000" that Mounce signed over to her was actually her award under the Equal Access to Justice Act (EAJA), and totaled $5,875.20 – a sum reduced from $6,912 due to Mounce's outstanding IRS debt.  See id. at 2 n.1.  She pointed out that the second and third agreements explicitly contained a provision allowing her to recover EAJA fees.[3]  Id. at 3.  Mounce, moreover, "was not asked to pay a fee prior to being awarded a benefit," and "any EAJA fee paid to counsel would be refunded to Mr. Mounce if [Jones] also received fees from Mr. Mounce's benefits for the same legal work."  Id.  Indeed, Jones proposes to refund the $5,875.20 EAJA fee to Mounce if her current $37,953.63 fee is granted.  Doc. No. 14 at 3.

---

[3] Jones explained that the first fee agreement contained no EAJA provision because the agreement did not "allow for the possibility of a federal court complaint," and "EAJA [fees are] payable only after prevailing in federal court."  Doc. No. 17 at 3.

Jones also provided a "line by line reply" to Mounce's
letter and allegations of coercion.  See Doc. No. 17-1 at 9-12.
She noted that Mounce agreed to sign over the check to Jones as
an assignment under the EAJA.  Id. at 9-10.  Jones claims that
she presented Mounce with the third fee agreement "just to be
clear about the existing terms of representation," even though
"[i]t changed nothing" and only "reiterated that the fee was to
be 25% of all past due benefits."  Id. at 10.  "Mr. Mounce
signed the agreement after being assured that I would continue
to represent him whether or not he signed it, as its main
purpose was to help him understand the existing agreement,"
Jones wrote.  Id.  Indeed, she added, if she had not attended
the hearing, Mounce's claim would have been denied, and no one
would have received compensation.  See Doc. No. 17 at 7.  As to
the involvement of Daley, the law partner, Jones noted that "I
asked Mr Daley to join us" and "[w]e made it clear to Mr Mounce
that I would continue to represent him at the upcoming hearing
whether or not he signed the agreement, especially as it did not
change anything."  Doc. No. 17-1 at 10.  Jones denied that Daley
ever asked Jones to accept $6,000 in lieu of the 25% fee.  See
id.

Jones also noted that Mounce's alleged personal troubles
may have affected his understanding of their agreement.  "[P]art

9

of the reason that Mr Mounce was deprived of normalcy [in his
personal life]," she explained, "was the fact that he had been
incarcerated for almost 2 years, ending just months before the
date of the last hearing." Id. at 10-11.  She stated that she
never agreed to accept $18,000 in lieu of 25% of back benefits
and "did not attempt to estimate Mr Mounce's potential
retroactive benefits, or agree to accept a fee of a set amount."
Id. at 11.  Finally, Jones responded to Mounce's allegations of
coercion by stating that the third fee agreement "changed
nothing" and "was intended to clarify for Mr Mounce his already
existing obligation." Id. at 12.  "Most claimants," she noted,
"are at the lowest point of their lives when they apply for
Social Security," a fact to which she is "highly sensitive."
Id.  She had, however, "represented [Mounce] for 7 years,
obtained a psychological evaluation for him and purchased years
of medical records, for which he has not paid, despite now
having the ability to pay." Id.  Mounce "was never asked to 'go
it alone' and was not coerced." Id.

## II.  ANALYSIS

Jones argues that both the second and third fee agreements
straightforwardly entitle her to 25% of Mounce's back benefits.
She further maintains that a 25% fee is presumptively reasonable

10

because, among other things, she had a lawful fee agreement and expended significant time, effort and risk of nonpayment on the case.  The Commissioner counters that Jones's fee request is unreasonably high and should be reduced, although she does not specify how much.  In support, the Commissioner advances three arguments: (1) Jones already requested, and the ALJ denied, a fee for Jones's work at the administrative level; (2) Mounce objects to the fee and claims the fee agreements were coerced; and (3) the fee would be a "windfall."  See Doc. No. 16 at 3-6.

I find the Commissioner's first argument unpersuasive, for reasons I detail below.  The second and third arguments appear to hinge on whether Jones's fee agreements entitle her to the relief she seeks – an issue that the parties have not adequately briefed.  As such, before deciding the motion, I direct the parties to submit further briefing in response to the two questions I outline at the end of this order.  To place these questions in context, however, I begin with an overview of attorney's fees in Social Security cases.  I then address the Commissioner's first argument, and conclude by outlining my request for further briefing from the parties.

A.   **Attorney's Fees in Social Security Cases**

Attorneys who represent Social Security claimants generally receive compensation in two ways.  First, if they prevail in

court, attorneys can recover a fee directly from the U.S.
Government under the Equal Access to Justice Act (EAJA).[4]  See 28
U.S.C. § 2412(d)(1)(A).  Second, if the claimant is awarded past
due benefits, either via a court order or an administrative
ruling, the attorney may recover a portion of that award.  See
42 U.S.C. § 406.  Attorneys may pursue both EAJA and § 406 fees,
but if both are awarded they must remit the smaller fee to the
claimant.  See Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002).

    Each method of recovery is subject to caps and regulations
that aim to prevent attorneys from taking advantage of
claimants.  For example, EAJA fees – which are calculated based
on hourly rates – are capped in most cases at $125 per hour.[5]
See 28 U.S.C. § 2412(d)(2)(A); Gisbrecht, 535 U.S. at 796.
Attorneys seeking a portion of a claimant's past-due benefits
must submit their fee requests for approval, either by the

---

[4] The EAJA awards fees to a "prevailing party" unless the court
finds that "the position of the United States was substantially
justified or that special circumstances make an award unjust."
28 U.S.C. § 2412(d)(1)(A).

[5] As explained in Gisbrecht, a "higher fee may be awarded if 'the
court determines that an increase in the cost of living or a
special factor, such as the limited availability of qualified
attorneys for the proceeding involved, justifies a higher fee.'"
Gisbrecht, 535 U.S. at 796 n.4 (citing 28 U.S.C. §
2412(d)(2)(A)(ii)).

Social Security Administration (SSA) or a federal court.  See
generally 42 U.S.C. § 406.

   42 U.S.C. § 406 provides the statutory framework for
attorneys seeking an award from a claimant's past-due benefits.
Section 406(a) governs attorney's fees for representation in
administrative proceedings.  See 42 U.S.C. § 406(a).  Section
406(b) applies to representation in federal court.  Id. §
406(b).  The SSA has "exclusive jurisdiction" to award
attorney's fees for work done in administrative proceedings; the
court has "exclusive jurisdiction" for work done in court.
Clark v. Astrue, 529 F.3d 1211, 1215 (9th Cir. 2008); but see
Mudd v. Barnhart, 418 F.3d 424, 428 (4th Cir. 2005) (allowing
courts to consider work done before the SSA as "one factor" in
determining the reasonableness of a fee for court-related work
under Section 406(b)); Destefano v. Astrue, No. 05-CV-3534
(NGG), 2008 WL 623197, at *6 (E.D.N.Y. Mar. 4, 2008) (collecting
cases holding the same).  In other words, a grant or denial of
fees for an attorney's work in one forum may not necessarily
impact a grant or denial of fees for work done in the other.
See Clark, 529 F.3d at 1215.

   Section 406(a) provides two methods for attorneys to obtain
fees for representation at the administrative level:  the fee
petition process and the fee agreement process.  See id. at

13

1214.  Under the fee petition process, once a claimant wins back
benefits, the attorney may petition the SSA to award a fee.  See
42 U.S.C. § 406(a)(1).  The SSA, in turn, "shall . . . fix . . .
a reasonable fee" to compensate the attorney, which presently
may not exceed $10,000.  Id.; 2 Barbara Samuels, Soc. Sec.
Disab. Claims Prac. & Proc. § 21:88 (2nd ed.).  No fee agreement
is necessary under this process.  See 42 U.S.C. § 406(a)(1).

Under the fee agreement process, on the other hand, the
attorney and claimant must submit a signed contingency-fee
agreement to the SSA before the ALJ decides whether or not to
grant benefits.  See id. at § 406(a)(2)(A).  If a claimant wins
back benefits, the SSA "shall approve" the fee agreement,
provided that the fee does not exceed 25% of the claimant's
benefits or $6,000, whichever amount is smaller.[6]  Id.; see
Maximum Dollar Limit in the Fee Agreement Process, 74 Fed. Reg.
6080-02 (Feb. 4, 2009) (increasing the maximum dollar limit to
$6,000).  Notably, "[w]hen an ALJ or other decision-maker
evaluates a fee agreement, he or she is looking at the document

---

[6] The statutory text states that a fee may not exceed the lesser
of 25% of back benefits or $4,000.  42 U.S.C. §
406(a)(2)(A)(ii)(II).  It further provides, however, that the
"Commissioner of Social Security may from time to time increase
the dollar amount," subject to certain restrictions.  Id. §
406(a)(2)(A).  The Commissioner has increased the dollar amount
over time, and it now stands at $6,000.  Maximum Dollar Limit in
the Fee Agreement Process, 74 Fed. Reg. 6080-02 (Feb. 4, 2009).

itself not at the amount of the fee which may ultimately be paid," since "no one will know what the actual fee might be until it is later calculated by the appropriate component of the SSA." Samuels, supra, § 21:77.

Section 406(b) governs fees in court, and guides my analysis here.  The statute permits attorneys to recover a "reasonable fee . . . not in excess of 25 percent of the total of [a claimant's] past-due benefits," payable out of, and not in addition to, the claimant's back benefits.  42 U.S.C. § 406(b)(1)(A); Gisbrecht, 535 U.S. at 795.  Most attorneys collect fees through a contingency-fee agreement with the claimant, although an agreement is not strictly required.  See 42 U.S.C. § 406(b); Gisbrecht, 535 U.S. at 804 ("Traditionally and today, the marketplace for Social Security representation operates largely on a contingency fee basis.") (internal quotation marks omitted); Greenberg v. Colvin, 63 F. Supp. 3d 37, 50 (D.D.C. 2014) ("The statute . . . does not demand a contingent agreement . . . courts have held that fees under § 406(b) may be available where there is no contingency arrangement between the claimant and his counsel.").

In cases with valid fee agreements, the role of courts is to "review" these agreements "as an independent check, to assure that they yield reasonable results in particular cases."

15

Gisbrecht, 535 U.S. at 807.  As the Supreme Court instructed in
Gisbrecht, courts look "first to the contingent-fee agreement,"
ensuring that the agreement has not exceeded Congress's
"boundary line" of 25% of back benefits.[7]  Id.  If the agreement
passes this first test, courts then review the resulting fee for
reasonableness.  Id.  Where, for example, the attorney is
responsible for a delay in the case adjudication; "the benefits
are large in comparison to the amount of time counsel spent on
the case;" or the attorney would receive a "windfall," courts
may reduce the fee.  Id. at 808.  If a fee is reasonable under
Gisbrecht's guidelines, courts will uphold it.  See id.

## B.    The ALJ's Decision to Deny Fees

The Commissioner first argues that I should deny or reduce
Jones's fee request because the ALJ previously rejected her
request under Section 406(a) for work done at the administrative
level.  Doc. No. 16 at 3-4.  This argument is unpersuasive.  As
explained above, fee awards under Section 406(a) are separate
from fee awards under Section 406(b).  See 42 U.S.C. § 406;

---

[7] Gisbrecht resolved a circuit split over the application of the
"lodestar" method in Section 406(b) cases.  In the past, some
circuits ignored contingent-fee agreements and applied a
lodestar calculation, which multiplied the number of hours
reasonably worked by a reasonable hourly rate to determine an
attorney's fee.  See Gisbrecht, 535 U.S. at 797-99.  Other
circuits deferred to lawful contingent-fee agreements, so long
as the resulting fee was reasonable.  Id. at 799.  Gisbrecht
adopted the latter approach.  Id. at 808-09.

Clark, 529 F.3d at 1215 (noting that the SSA and the court have
"exclusive jurisdiction" over their respective fee awards).  The
ALJ awards fees for work done at the administrative level; the
court awards fees for work done in court – and a decision to
grant or deny fees in one forum does not necessarily influence
the other.

    Here, the ALJ denied Jones's fee request because her fee
agreement with Mounce "set[] a fee that is more than the lesser
of 25 percent of the past-due benefits or $6,000."  Doc. No. 16-
2 at 4.  The parties do not dispute the validity of the ALJ's
decision, and it appears correct: Jones's third fee agreement,
signed two months before the ALJ's decision, contained no $6,000
cap.  See Doc. No. 14-1 at 8.  As such, the ALJ was not
authorized to approve the fee.  See 42 U.S.C. § 406(a)(2)(A);
Samuels, supra, § 21:71 (noting that the "decision-maker will
act on the most recently negotiated and signed fee agreement SSA
received before the date of the favorable decision").

    The Commissioner insinuates that the ALJ's denial of fees
should somehow influence my ruling here, but does not explain
why.  See Doc. No. 16 at 3-4.  I do not know why Jones drafted a
fee agreement that would not entitle her to fees under Section
406(a), but it is not my duty to speculate here.  I must instead
turn my attention to the more difficult question of what fees,

if any, Jones may receive under Section 406(b) for work done
before this court.

## C.   **The Validity of the Fee Agreements**

The Commissioner raises two more arguments.  First, she
points to Mounce's claim that he was coerced into signing the
third fee agreement.  Second, she argues that Jones's fee is a
"windfall" under Gisbrecht and related cases.  In response,
Jones disputes Mounce's claims of coercion and contends that a)
she and Mounce had a valid fee agreement that should receive
deference under Gisbrecht, and b) the fee is not a windfall
compared to fee awards granted by other courts in similar cases.

These arguments ignore what is, in my view, a threshold
question: did Jones have an enforceable fee agreement that
entitled her to compensation under Section 406(b)?  Jones
completed her work in this court before signing a fee agreement
that addressed compensation for that work.  The first fee
agreement – which arguably expired prior to the court appeal –
only addressed fees at the administrative level.  Moreover, the
two agreements executed after Jones completed her court work
contemplate the possibility of an EAJA award, but otherwise
appear to address only fees that could be awarded by the SSA
under § 406(a), which this court lacks jurisdiction to address.
Thus, a substantial question exists as to whether counsel's

claim for fees under § 406(b) was ever subject to an enforceable
fee agreement.  If no such agreement was ever executed, it
remains unclear how counsel's fee request should be addressed in
light of Gisbrecht.  See, e.g., Thomas v. Astrue, 359 F. App'x
968, 973 (11th Cir. 2010) (holding unenforceable for lack of
consideration a fee agreement signed after the completion of an
attorney's work done in court); Artrip v. Colvin, No.
2:07cv00023, 2013 WL 1399046, at *2 (W.D. Va. Apr. 5, 2013)
(finding that the fee agreement between the attorney and
claimant only pertained to work before the SSA and therefore
applying the lodestar method to determine fees), Sanfilippo v.
Comm'r of Soc. Sec., No. 8:04-CV-2079-T-27MSS, 2008 WL 1957836,
at *3 (M.D. Fla. May 5, 2008) (finding that no fee agreement
existed between the attorney and the claimant and instead
applying the lodestar method); Bentley v. Comm'r of Soc. Sec.,
524 F. Supp. 2d 921, 925 (W.D. Mich. 2007) (same).

This case presents an unusual fact pattern and a set of
unresolved legal issues.  Without a more careful treatment of
these issues, I am hesitant to rule definitively on the motion
before me.  I therefore direct the parties to address the
following questions:

**1.  Did Jones and Mounce enter into any enforceable fee agreement entitling Jones to compensation under Section 406(b)?**

**2.  If no enforceable fee agreement was entered into that authorized relief under § 406(b), what standard should guide an award of fees under this Section?**

### III.   CONCLUSION

The parties are directed to submit further briefing on the questions raised above.  Attorney Jones shall have fourteen (14) days to submit a brief; the Commissioner shall then have fourteen (14) days to respond.  I will then carefully consider the parties' arguments and issue an order on Jones's motion for attorney's fees (Doc. No. 14).

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 23, 2016

cc:  Elizabeth R. Jones, Esq.
     T. David Plourde, Esq.